Case number 20-5045, Knight First Amendment Institute at Columbia University, Committee to Protect Journalists' Appellants v. Central Intelligence Agency, et al. Ms. Swain for the appellants, Ms. Wingle for the affilies. Good afternoon. You can start whenever you're ready, Ms. Swain. Thank you, Your Honor, and may it please the Court, my name is Alexandra Swain and I represent the Committee to Protect Journalists. I've reserved two minutes of my time for rebuttal. So, Your Honors, I'll say at the outset that this is an extraordinary case on an important issue in which the government has taken an illogical position. CPJ stands before this Court as detailed in our briefs because a man was gruesomely murdered and credible reporting suggests that the United States may have been in a position to warn him. The American public is of threat to Mr. Khashoggi's life and whether they fulfill their duty to warn him. And this is the exact type of case that calls for the public accountability that Congress intended the Freedom of Information Act to promote. The relief that we see from this Court is extremely limited. We're simply seeking that the IC elements confirm or deny the existence of documents related to the minimum for the government to meet its burden and logically explain their Glomar responses in light of a fellow IC elements public official acknowledgment that the United States had no prior knowledge of Mr. Khashoggi's killing and the CIA and the ODNI's position in the open society litigation pending before the Southern District of New York. As you all know, the Supreme Court has held that. Can I ask you a predicate question here? You talk about the State Department and being a member of the intelligence community. And what I wanted to know is, is the State Department itself actually a member? It didn't seem to me that it's a member, that maybe it has a Bureau that's a member, Bureau of Intelligence and Research, but the State Department as an entity, not actually part of this IC group, as we call it. Is that right? So one particular Bureau, you're right, Your Honor, within the Department of State, the Bureau of Research and Intelligence is a member of the intelligence community. The State Department's not. For obvious reasons, normally the State Department does not want people to think that all its members, all its ambassadors are part of an intelligence community. Is that right? Your Honor, I will say that the deputy spokesperson got up before the American people and spoke for the Department of State. Sure. I want to confirm the structural point, and that is that the State Department, as an entity, is not a member. It's only this one Bureau within the State Department that's a member. Yes, Your Honor, the Bureau of Research, and Intelligence is a member of the intelligence community. But again- Is there any evidence that the State Department spokesperson was speaking on behalf of the Bureau? I believe it is our position that the Department of State, the official spokesperson for the Department of State, was speaking more than just for the Bureau of Research Intelligence. It was, in fact, speaking on behalf of the entire United States. I'll just quote the particular statement. The deputy spokesperson in front of the American people got up and said, I can definitively say that the United States had no advanced knowledge of the matter. Your Honor, I'll say that I can think of nothing that's more of an intelligence, a matter of intelligence, than a clandestine plot by a foreign government to kill a dissident. The Department of State can't simply put out a facile preface and just erase the rest of its statement. If it wasn't speaking towards an intelligence issue, how could it have said the United States had no advanced knowledge? Isn't it not unusual for press spokespeople of various agencies or various organizations to use a lot of words in order to say nothing? Sometimes that's their job. I hope judges do that less often than PR people. Isn't it possible that this State Department person was asked a question, it was a sensitive matter, and part of their job was to answer it in a way that was responsive enough that the reporter would move on to the next question, but not so responsive that it gave away any intelligence matters? Your Honor, again, that the intent not to speak is not a recognized defense under the FOIA doctrine, and again, there's no other way to interpret this statement other than to speak on a matter of intelligence, and the statement inherently creates a- Why wouldn't the caveat that I cannot address intelligence matters at a bare minimum make clear that the spokesperson was not speaking on behalf of the Bureau of Intelligence and Research? Because, Your Honor, the Deputy Spokesperson said plainly that I can definitively say United States had no advanced knowledge, and the Deputy Spokesperson speaks on behalf of the entire Department of State, the Bureau of Research and Intelligence included, and so even if Your Honor, if the spokesperson for the Department of Agriculture was asked by a reporter this exact same question, and the spokesperson for the Department of Agriculture said that same statement about I can definitively say on behalf of the United States that this didn't happen, would that define the intelligence community? Absolutely not, Your Honor, and that's specifically not our argument, and so the Department of State, the preeminent agency on foreign affairs spoke on behalf of the United States here, and the entire United States- On a foreign affairs matter but not on an intelligence matter, which is what this whole issue is about. Your Honor, your question was about the Department of Agriculture and whether or not we can take that statement to speak on, you know, matters outside of its purview, and I would say absolutely not, Your Honor. The four government agencies before this court are members of the IC. They're members of the intelligence community. They're members that are all bound by the duty to war. If someone says I'm speaking on behalf of the intelligence communities- Right, exactly, that not by itself, but when you have the- Speaking on behalf of the United States- I haven't- I was going to say it only binds the intelligence community because a bureau within the State Department is part of the intelligence community, that's your theory? No, Your Honor, what we're positing is that when a member of the IC is purporting to speak for the entire United States on a matter directly related to a shared responsibility, a shared duty, that not only is a shared duty, but it contemplates information sharing and collaboration, and when it's purporting to speak more for just itself, then that statement is of the substance that it's in the spirit of the circuit's precedent to be able to apply this limited application of the public acknowledgement doctrine, and we do not- we are not seeking, I will say on the record, we are not seeking to have this statement apply to the entire United States, just the IC elements before the court. The entire United States is not before the court, and so this is a very limited application, and I'll also say if this court does not believe that it's an official acknowledgement, it is still contradictory record evidence that district court should have considered in contemplating the Glomar responses. So, you know, I can say contradictory record evidence and official public acknowledgement doctrine because that's the doctrine, but I just want to take a step back, Your Honors, and just speak in plain language about what the government is asking you all to do here. The government has said that to acknowledge there are no responsive documents is to acknowledge an intelligence failure, a gap in intelligence. To be clear, the entire world already believes that there is this gap because the Department of State official spokesperson got up before the American people, got up before our allies and our enemies. Ms. Swain, let me interrupt. I think there's something question begging about what you're saying that the whole world believes it because the State Department person said it, but one of the questions in this case for us is do we actually think that the world believes the State Department speaks for the intelligence community? And I thought of a couple of examples you can kind of take your pick, but in the movie, The Sound of Music, there are six or seven untrapped children. Does the youngest Gretel speak for all the family, even though she is a member of the family? Duke is in the ACC. Does Duke speak for the ACC? If someone at Duke says on behalf of the ACC, we think, et cetera, et cetera, et cetera. Or if you're talking about the family-owned crime family, does Fredo speak for the whole family? It seems unlikely. Well, first of all, Your Honor, I'm a Dukie, so I like that. But I will address your questions. I say absolutely not. We're talking about the preeminent agency on foreign affairs that's a member of the intelligence community, and they were speaking, their statement specifically gets to a matter. That means that their statement, the United States had no advanced knowledge, would mean that there's no duty to warn for any of the intelligence communities. Ms. Swain, you've said a couple of times, there's the preeminent agency for foreign affairs. Would you, and I agree with that, but would you concede that at least the perception of the State Department is that when it comes to the intelligence community, it is not the preeminent member. In fact, it's more like the Gretel of the intelligence community, intelligence elements, and the Director of National Intelligence is at the head. But to be clear, the harm that the government is contemplating here, and this is why this statement directly contradicts the harm that the government is saying, is that people would know more by acknowledging the existence or nonexistence of documents responsive to our requests. The American people would somehow know more about the gap in intelligence. I'm simply positing that this statement contradicts that. And again, you know, that is one piece of our argument. We again maintain that it is official public acknowledgement. And I'll also just quickly point out one of the other logical gaps in the declarations that means this court should reverse and remand. So the government has... Before you get to that point, just one more question on official acknowledgement, which is, we seem to have precedent, pretty strongly confirming Judge Walker's general instinct, which says, it doesn't matter whether there are disclaimers or not, one agency of the executive branch can't officially acknowledge for another. And we applied that principle in Frugione where the acknowledgement just seemed self-evident when OPM said, CIA is maintaining the guy's employment records and CIA wanted to and same thing in more as between FBI and CIA, both of whom are under the umbrella of the intelligence community. Right. So first, Your Honor, I just like to acknowledge I'm running up on my rebuttal time. So I'm happy to continue answering. No rebuttal time. Okay. Don't worry about that. Okay. Thank you, Your Honors. So to address the question, we believe that this is a matter of first impression for this court. And this court has not made so strong of a statement as to say, under absolutely no circumstances can one agency publicly acknowledge for another. And I'll go and answer your specific question about the Frugione case, because I think the Frugione case is miles away from this case. And so is any other case that this court has dealt with a similar issue. And so in Frugione, Your Honors, you have the Office of Personnel Management, wherever you the government, you submit your tax forms, they work out your payment, the Office of Personnel Management, their statement was supposed to apply to the CIA on a matter of national security and national intelligence. And so in Flores, that page seven, or sorry, Frugione and page 776, the court said if Frugione were right, however, then other agencies of the executive branch, including those with no duties related to national security could obligate agencies responsibility in that sphere to reveal classified information. And I respectfully submit that's miles away from the case that we're presented with today. And which again, it's an official statement by the Department of State, the preeminent agency on foreign affairs speaking as a member, a member of the IC element speaking on an issue that directly relates to a matter of shared responsibility on which all of the IC elements before the court today are bound, and not just speaking for itself, but for the United States government. And so, you know, I think, again, this is a distinct situation from Frugione, and it makes sense in a line with the courts in a line with Marino and the Center for Public Integrity to apply that reasoning here, while our facts may be novel, the reasoning that we're asking this court to apply is certainly not. And so, are you done with that answer? Did you want to finish? Yes. And I will say that for those reasons, this court should reverse and remand to the district court for... I have a quick question before you. So the State Department was an original defendant in this case, and then they've dropped out of the case. And I was a little confused in the brief as to exactly what happened. Did they... I think there's a statement, they conducted a search. Did they actually conduct a search and report the results? Yes, Your Honor. So the... What did they say when they conducted the search? What was their report on their search results? So the Department of State did not issue... Importantly, they did not issue a GLOMAR response to our request that, like the other agencies, answered and produced documents about the first request, which is not an issue here, and then searched and went through a robust process with us going back and forth on search terms and searched and did not find any responsive records to the issues at... To the requested issue here. And that's exactly what we're asking. Hang on, hang on, hang on. I get that. And so they reported back that they had no records. Do you know if the search included the Bureau of Intelligence and Research? Was that explicit in their description of the search? I will have to go back and look. I believe so, but I would need to go back and look, and that's not in the record before the court. So we're happy to submit a letter to the court explaining that, but... Only if there's something actually in the record that would make clear whether they searched the records of the Bureau of Intelligence and Research and then reported back no documents were found. I don't believe that's in the record, Your Honor, because we dismissed before the summary judgment process. But again, I think highlighting the fact that the Department of State did not issue a GLOMAR response here, and they did that in part because of the statement that they made, is exactly what we're asking the IC elements to do. It's only... The rationale here... Sorry. No, you go ahead. The rationale here, which is that a non-GLOMAR response will reveal either what intelligence was being gathered or where the intelligence was being gathered, seems a lot more compelling as applied to agencies whose job it is to gather intelligence than it is as applied to the State Department. So the fact that the State Department didn't GLOMAR this doesn't seem to move the ball very much for you. Right. And again, that's a reason why we dismissed the Department of State. And the response to our GLOMAR does not impact... Again, as you're saying, Judge, does not impact the burden that the government has here before this court. It does not impact their burden of justifying their GLOMAR responses. And I'll just point out a huge logical flaw that requires reverse remand in their declarations, which is they've said that to acknowledge the existence of documents about Mr. Khashoggi would inherently reveal something about intelligence source or intelligence method. They have not explained why that's the case, and so they have this huge logical hole in their declarations. That is, they have not explained why information about Mr. Khashoggi is of the type, is of the nature, in which just its mere existence would reveal something about the source. You didn't ask for just any information about Mr. Khashoggi before I request that it's not information about threats, aware of knowledge of threats to Mr. Khashoggi, correct? Yes, Your Honor. And advanced threats, obviously, before his disappearance. So saying, if you just said, do you have anything on Mr. Khashoggi, that might be a different matter. But the question was only whether you had gained information about a threat and, in fact, a threat that you would have a duty to warn about, right? Like threat of paper cuts or anything, or was it a threat? I thought it was a threat about that would trigger the duty to warn. Right, Your Honor. I just want to clarify one point. Our GLOMAR, sorry, not our GLOMAR responses. Our FOIA requests were about documents related to the duty to warn Mr. Khashoggi. So that encapsulates a broad swath of documents that could be documents about, you know, could be documents about threats that would trigger the duty to warn. But it also could be after the fact assessments or, again, you know, as we put forth, it could be employees, you know, maybe speaking about, you know, Mr. Khashoggi's case. And so that is a gap. And the test for having intelligence that might trigger the duty to warn is the phrase, I think, is it credible, specific and credible, or direct and credible? There's a test in the IC requirement on duty to warn, right? That's when you have a duty to warn, when you have direct and credible or direct and specific. Right, that that is what the directive says, Your Honor. But again, the I just want to back up here. You said, look, there's no reason your FOIA request would intelligence sources and methods. But if your FOIA request seeks only information about whether they had credible and specific intelligence, how would your FOIA request not necessarily implicate intelligence sources and methods? That's the only time. So so our I'll say at the outset that our we've requested records about the duty to warn that could be if the duty to warn is triggered, and they have that credible response, but it could be also after the fact sort of assessments and discussions about the duty to warn. But specifically, I agree, Your Honor, with your statement that if duty to warn records exists, that would, and those records were about contemplating whether or not to warn Mr. Khashoggi, that would require there to be intelligence about threats to Mr. Khashoggi's However, the government has to be credible, specific intelligence and the views of the intelligence agencies. Yes, Your Honor, but that but the the the burden here on the government is to explain why information about threats to Mr. Khashoggi is of the type that it's near existence. We're at the Glomar stages near existence would reveal information about the source of that intelligence or the particular method. So that's the gap here. It's not that it's not that the if documents exist, you know, we're necessarily chat. Oh, I think we are because we're, you know, we're saying that there could be after the fact assessments, but we we understand that there could be some documents that are about threats to Mr. Khashoggi intelligence about that. But that's not that matter issue here. Their burden is simply because we're at the stage to say the mere existence of that intelligence would reveal something about the source or method of that intelligence in which it was gathered. And that is the law that they have not met and that they have to meet their they have to meet their burden and doing that. That's their burden under the FOIA law. My colleagues have no further questions. We'll hear from the government and then we'll give you two minutes for rebuttal. Thank you, Your Honor. Sharon Swingle for the Federal Government Appellees. I'd like to begin where Judge Millett left off, if I may, which is to point the court to the specifics of the FOIA request here, because I think it makes clear why it is that any non-GLOMA response would necessarily implicate intelligence activities, intelligence sources, and methods. The requester here sought records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, not the broader kind of requested issue in the Open Society case, but really specifically tailored to that duty to warn. And that directive triggers a duty to warn only if an intelligence agency has credible and specific information indicating an impending threat to a specific person of intentional killing, serious bodily injury, or kidnapping. So necessarily, therefore, this request to the intelligence agencies would require an agency to confirm or deny the existence of intelligence relating to specific credible intelligence information about an imminent threat. So intelligence at a point in time about a particular person, Mr. Khashoggi, or individuals who wish to do him harm. And the declarations provided ample support, as the district court found, for the agency's GLOMAR requests here. And of course, those declarations are entitled to substantial weight under this court's case law. The ODII... I'm sorry? No, no, please, Your Honor. Can I ask you about the State Department, which apparently did do a search? Do we know whether that search included the Bureau of Intelligence and Research? So I do not know whether the search included that Bureau, and there is nothing in the record about the scope of that search. My understanding from the back and forth with counsel is that the government took the position that the press spokesman's person would not preclude a GLOMAR, but that it was choosing not to GLOMAR. Okay. And there's no sort of public record documents of what the scope of the FOIA search was? Not that I'm aware of, Your Honor. And I would just add here, obviously, the plaintiff here has not argued before this court that the State Department's ability to or willingness to search for responsive records somehow bears on the propriety of the GLOMAR responses by the intelligence agencies here. So I think in any event, that argument is waived. I had another, sorry, did you have a question, Ms. Ganser? Okay. I'm just trying to understand this. I understand GLOMAR how it generally applies in the intelligence community, and usually it's, the whole point of GLOMAR is we can't say anything one way or the other. Harm to intelligence one way or the other. We can say nothing. But this arises in the context of a very strange exception, and probably one for good policy reasons. And that is, the very exception they're triggering here is one where intelligence communities share intelligence with third parties. If the government had or warned under this intelligence directive, warned Pat Millett of an impending threat based on credible and specific intelligence, and then Pat Millett wanted to file a FOIA request, the same FOIA request here. So I've already been given a briefing on this threat to me and on the intelligence, that intelligence has revealed this threat to me. And then I filed the same FOIA request just to make sure I got everything. Could you invoke GLOMAR? I honestly couldn't say, Your Honor. I, you know, obviously the duty to warn does contemplate some disclosure of limited amounts of information for the protection of individuals, albeit without- The parties have no obligation to keep any of it secret. I don't know under what circumstances those information sharing, that information sharing is done, or whether there are commitments to ensure confidentiality. I simply don't know. And can I just add, Your Honor, it's also not clear, you know, if one part of the U.S. government provides information, would that preclude other agencies from invoking GLOMAR? Surely not. I'm not talking about State Department here. I'm assuming the CIA or the Director of National Intelligence. I don't know if the documents are sought from those offices or agencies. Well, and, and the directive does contemplate that a person's warning might come from an entity other than the intelligence agency that has the credible and specific information. Well, either there's someone in the intelligence agency or the intelligence agency has told someone else about their intelligence and asked them to go tell this other person, all of which seems rather inconsistent with the principle, both of GLOMAR and the principle of FOIA, that if you to tell one person, you have to tell whoever a FOIA applicant is. That's what I'm wrestling with in this case. Well, and that's why I would be really hesitant to speak to the hypothetical, because in practice, I just have no knowledge of how those notifications are made. I do think, though, that it, it really highlights the danger of treating disclosure by one government agency as disclosure by any government agency. And I think, I'm just saying, if you have, if the agency itself has adopted a rule that says, let's imagine they just sort of adopted a rule that says we don't share intelligence sources methods with anybody, unless we think an individual has been threatened, at which point we will share it with them. If that was sort of, here, I know it's a policy and they could decide not to share it, there's a standard in there for it, but they had a regulation that said, or rule that said, without exceptions, if we get intelligence information on a threat to an individual, third party outside the government, we will share it with them. You couldn't do GLOMAR in those circumstances. Well, I think we still could under exemption three, because you're talking about the type of information that is also protected from disclosure by statute, right, regardless of any showing of harm to the security. It's protected from unauthorized disclosures. Correct, Your Honor. I'm noticing here is a rule that authorizes it in certain circumstances. Well, and I think, obviously, the rule under the FOIA is disclosure to one person is disclosure to anyone, but I wouldn't necessarily transport that rule wholesale to disclosures made under Directive 191, where there is also, of course, a judgment made that disclosure to the threatened individual would not improperly undermine or disclose, you know, sensitive national security sources. That's exactly my point. You have a system of a rule in here or directive in here, but if by hypothetical, it gets turned into a rule that says this stuff can be turned over in a particular circumstance, can be acknowledged and disclosed. The existence of intelligence can be acknowledged and disclosed. I've never, I can't think of any situation in which BLOMAR has applied where the agency says, but in our discretion, we've adopted a rule that in particular circumstances, we will, in fact, acknowledge and disclose. I really want to resist that suggestion, Judge Millett, because, in fact, this court's case law, there are many, many cases in which the government initially withholds classified or statutorily protected information, and then, as a matter of policy, makes a subsequent judgment that it can and will release portions of that information. That's a completely different ordering. My ordering is they've made this disclosure, in my hypothetical, they've actually made the disclosure before the response was we assert it, and then, we decide not to continue with it. We make a discretionary judgment not to do it. I'm in the reverse order. You've made a disclosure, in my hypothetical, to a third party, and yet, you're still asserting BLOMAR. I would look back to the line of cases in which this court initially recognized the BLOMAR doctrine. There were multiple cases involving multiple FOIA requesters looking for information about the project and the CIA's involvement in that project, and obviously, the government ultimately made extensive disclosures. I'm not aware of the precise timing, but obviously, this court held repeatedly that the government should not be penalized for its willingness to provide, perhaps as a matter of discretion, additional transparency into secret government operations. The court recognized that principle in Larson. People there, they're the exact same information that the government had discretionary with discretion, chose to disclose, would not penalize its decision not to disclose under FOIA. I just don't think it's a fit what you're talking about. Yeah, with all due respect, Judge Millett, obviously, no notification here has been made, and so, this is not the facts as it comes before this court. No, but what comes before this court is your directive, and your assertion. That's what I'm questioning about. And again, because the directive imposes no hard and fast requirement, no matter the threat to national security, to warn, I'm struggling to understand exactly why you think that the existence of a conditioned obligation, which is intended to nevertheless sufficiently protect intelligence sources and methods, would leave the government unable to invoke GLOMAR. I'll let you move on, but that's a caveat that's not in this directive. There's nothing in this directive that says that the disclosure will be done in a way that will condition the protection of intelligence sources and methods, and that there's nothing that says that we will obligate the person who receives the warning to say nothing. That's all. But anyhow. And I apologize. I was not precise, Your Honor. My point is that the obligation to warn in the directive includes exceptions where disclosure would improperly compromise sensitive national intelligence sources or methods or foreign government sources and methods. That's all. Can I go back to a question that Judge Millett was asking about the request of the State Department? Maybe we can kind of logic our way through it. Maybe not. But if the FOIA requester asked for responsive documents from the State Department, which I don't know why they wouldn't have, and then the State Department provided or didn't provide documents and said, this is as much as the State Department is willing to give you, and is able to give you, and it didn't, if the State Department's, I guess, would it have been legal for the State Department to not tell the plaintiff here, we searched everything except our intelligence office, but we didn't search that because you're not allowed to have it? In point of fact, my understanding is that the State Department took the position that while its press spokesman statement, and frankly, to my mind, it's an extremely ambiguous, internally incoherent statement that doesn't disclose anything, but that that statement didn't preclude it from invoking a GLOMAR, but that it chose not to. Okay, but that's not my question. And I'm sorry, I phrased it in a very confusing way. Let me try again. The plaintiff here, Knight First Amendment, goes to the State Department and says, I want the following records, and the State Department doesn't invoke GLOMAR. Instead, the State Department provides them with some records, or the State Department says, we're not providing you with any records, and here's why. When the State Department does that, wouldn't the State Department have had an obligation to tell the plaintiff, we are not looking for documents in our intelligence office, if in fact, the State Department did not look for documents in its intelligence office? I think that the State Department would have had an obligation to complete a comprehensive search for every place reasonably likely to have responsive records, not knowing the scope of the actual search in question, which I believe was in part negotiated between the parties. I can't speak to more than that. Okay, no, that's responsive to my question, so thank you. I do think, though, that the fact that the State Department might have come back and said, we have no responsive documents, sheds essentially no light on the validity. And again, putting to the side the fact that they have not argued this, that the plaintiff has not argued this, that it sheds no light on the validity of the GLOMAR as to the other agencies, because there would be no reason to think that the State Department would have any knowledge of the existence or non-existence of responsive documents as to the other agencies. And just turning to those, I'm sorry, Judge Katsas? On official acknowledgement, Merino seems to stand for the proposition that one component of an agency can officially bind, and for official acknowledgement purposes can bind another component of an agency. Why shouldn't we treat the intelligence community as an agency for these purposes? It's a pretty well-defined group. People think of it as a substantial degree of coordination. It's a lot more than just some ad hoc task force. Why shouldn't we treat it that way? Well, I have a couple of answers, Judge Katsas. First, I think it's just flatly inconsistent with this court's case law, and more, as you pointed out in your earlier questioning, the statement by the FBI was deemed not to be an official disclosure on the part of the CIA, and obviously both the FBI and the CIA. True, but without expressly addressing this complication for your position, possible complication. Well, second, I think the argument just proves too much and really is inconsistent with the way this court understands official disclosure. True, the intelligence community does in some way coordinate their activities, but the exact same executive order that the requester points to here, Executive Order 12333, also directs every executive branch agency to coordinate and work cooperatively with the CIA to provide national security information intelligence to the CIA, and obviously all executive branch agencies, or at least, you know, perhaps excluding the independent agencies, all other executive branch agencies are intended to work cooperatively under the auspices of our unitary executive, the President, presumably with the President playing that coordinating function, you know, as mediated through the National Security Council. We wouldn't think that any executive branch agency, or at least this court has consistently held that any executive branch agency can't officially acknowledge information on behalf of any other, and yet that same logic would seem to flow given the President's sort of... Yeah, but that, I mean, that's one level of generality up from where we are with... I don't believe so, Your Honor. Again, you know... The entire unitary part of the executive branch. Well, the sort of coordinated role that the requester here points to is either under 12333, which does not oblige one intelligence agency to share information or, you know, make sure that every position it takes is consistent with that of every other IC. It does provide for the ODNI to mediate certain types of disputes, but it doesn't have some kind of formal coordinated single role that they play in tandem any more than the fact that the NSC might mediate a dispute between other executive agencies. Was the Director of National Intelligence in this intelligence community? The ODNI plays a coordinating role, yes. So if the Director of National Intelligence made the disclosure, made a disclosure of credible and specific intelligence information, made publicly a disclosure of credible and specific intelligence information about an individual, would that bind the CIA? I think that would be a harder question, particularly as related to Directive 191. Yes, that's why I'm asking the question. So if I can... Now this sort of networking, this relationship here, I get your argument about the State Department. I'm trying to just figure out whether within this network there is at any point someone who would have authority to waive it for other members. So as it relates to Directive 191, which is what I understand your question to be focused on, Directive 191 envisions that the ODNI will resolve any interagency disagreement about providing a warning. So the fact that the ODNI had... be in charge of making the warning. I'm asking a different question, and that is within this intelligence community if the DNI just made a disclosure. If it helps you to get away from the scenario, that's fine. The DNI makes an intelligence disclosure that implicates the type of intelligence that both the NSA and the CIA would also be involved in collecting. So the DNI makes a disclosure, an authorized public disclosure of specific intelligence information, and the CIA has that same specific intelligence information. Could it still do a glimmer? I think it would really turn on the facts, Your Honor, but Judge Millett... Same information by both of them. Does the DNI have the ability... I get your argument about State Department. I'm just saying does the DNI... Is there anybody within this intelligence group, and I'm starting with the DNI, have the ability by their disclosures to bind in the same way that, you know, an FBI disclosure could bind another entity that's a part of the Justice Department? And I'm not trying to be difficult, Judge Millett. I think the resistance I'm having is that this court has repeatedly recognized that the fact that a particular IC entity is operationally engaged in a region with a foreign government in particular intelligence sources and methods might itself be independently significant. And so, you know, if the ODNI discloses intelligence information but not the particular government entity that might be involved in collecting that intelligence agency, would that preclude, for example, the CIA from invoking a glomar? I don't believe so. If the CIA could... In the absence of any additional particular... Essentially what happens in your scenario is there's still an extra bit of intelligence information that hasn't been disclosed by the DNI doing it. That's your theory that, you know, who is doing the collecting could itself be protected. If there is no additional security information... If the OD... I'm sorry, Your Honor. I'm just trying to clarify my question because I appreciate your response. But if there is no increase, there's no change in what the information is between what the DNI is holding and the CIA is holding and the DNI's disclosure disclosed who has the information in the government. Would that preclude the CIA from doing... So I think the concern I have is I don't think the ODNI stands in the place of kind of a parent entity in the same way that, for example, the president stands as a parent entity for the CIA. I think the ODNI plays a coordinating role but does not, you know, the CIA does not directly report to the ODNI in the way that this court envisioned, for example, in the ACLU versus CIA case where the court was talking about statements by the president, the president's senior counterterrorism director at the instruction of the president and the CIA director, you know, the court there envisioned that it would be either an authorized representative of the agency or a parent above the agency. And I think the ODNI stands in a somewhat different role here from the president or the senior counterterrorism advisor there. My colleagues have any further questions? Okay. Thank you. Ask the court to affirm. Thank you, Your Honors. Ms. Swain, we'll give you two minutes for rebuttal. Thank you, Your Honor. I'll just tick through some of the government's arguments and some of your questions. So, Judge Millett, to your question about the way that duty to warn documents would come about, our specific request is about records concerning the duty to warn under Directive 191, and it wasn't as specific as to say records showing whether or not they warned Mr. Khashoggi, so that could encapsulate after-the-fact sort of assessments or things. Also, Your Honor's line of questioning, the court's line of questioning about the bearing of the state searches on the IC elements before the court, I maintain that it has no bearing on the government's burden to justify its Glomar response here, what the the Department of State did, because the Department of State specifically did not issue a Glomar response. It acknowledged that they had no documents. Here, they have issued a Glomar response, so we're just asking them to do the bare minimum of acknowledge whether or not there are documents, and I believe the government has said in their statement that just now in the admission that they did not warn Mr. Khashoggi. I'll also say just in the brief seconds that I have, we believe that this case requires reverse and remand with instructions for the IC elements to acknowledge the existence or non-existence of documents, or at least for them to meet their burden and submit more detailed declarations that could be reviewed in camera if necessary, if it has sensitive information. That's an option that the court can totally take. Alternatively, this court at least could just reverse and remand to the district court saying district court under the summary judgment standard, you should have considered all of this contradictory evidence on the record, and you should do that on remand. There's just too much, to use the technical term, too much fishy going on for the court, for the Globar justifications to stand here, and that's why we think this case requires reverse and remand. Thank you very much, counsel. The case is submitted.
judges: Millett, Katsas, Walker